I dissent. In my opinion, the work in question is extrahazardous and the relationship of master and servant exists between Thurston county and the workmen.
"The welfare of the state depends upon its industries, andeven more upon the welfare of its wage worker." Rem. Comp. Stat., § 7673. (Italics mine.)
The purpose of the workmen's compensation act, the legislature emphasized in the foregoing declaration, was not alone to protect the employer, but was to assure relief for the workmen and their families when the breadwinner was injured or killed in extrahazardous employment. Plainly, the statute so provides: *Page 495 
"The State of Washington, therefore, . . . declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, . . ." § 7673, supra.
The act applies to engineering work, which is defined as
". . . any work of construction, improvement or alteration or repair of buildings, structures, streets, highways. . . ." Rem. 1927 Sup., § 7675.
A workman
". . . means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise. . . ." § 7675, supra.
An employer is
". . . any person, body of persons, corporate or otherwise . .. while engaged in this state in any extrahazardous work or who contracts with another to engage in extrahazardous work." § 7675,supra.
When a county engages in extrahazardous work, such as that described in the case at bar, in which workmen are employed for wages, the county is an employer. Rem. 1927 Sup., § 7692. When the county is the employer, the statute provides that the payments into the accident fund shall be made from the treasury of the county, but if the work is being done by contract, the payroll of the contractor and the subcontractor shall be the basis of computation.
"Whenever the state, county, any municipal corporation or other taxing district shall engage in any extrahazardous work, or let a contract therefor, in which workmen are employed for wages, this act shall be applicable thereto. The employer's payments into the accident fund shall be made from the treasury of the *Page 496 
state, county, municipality or other taxing district. If said work is being done by contract, the payroll of the contractor and the subcontractor shall be the basis of computation, . . ." Rem. 1927 Sup., § 7692.
The provision, § 1, ch. 104, Laws 1931, p. 297, that the total payroll for the preceding calendar month shall be the basis of industrial insurance premiums, would be applicable if the county had let a contract for the work or if this were a controversy between a contractor and the department. I can not see wherein it is applicable to the facts in the case at bar.
The county directed and supervised the work done by the men sent to it by the Red Cross. The county exercised the right to direct the manner in which the work was performed. The county had the undoubted right of rejecting the services of any or all of the men sent to it to work on the streets, etc. The county had the right to discontinue the work, which would be an effective discharge of the workmen. Clearly, then, the county was an employer.
It is argued that the county had no payroll. The workmen were paid $2.50 (in the form of groceries, clothing or medical services) a day by the Red Cross from funds donated by the citizens of the county for that purpose. The county was receiving services at the rate of $2.50 a day for each man employed. This is the basis of computation for payment of premiums to the industrial fund, which payment, under the circumstances, is payable from the county treasury. The only unusual feature connected with this case is that the county received the benefit of the working men's efforts without cost to the taxpayers. The payments made by the Red Cross were for work done by the workmen as employees of the county, subject to the county's right to hire and discharge these workmen who worked under the supervision of the county. *Page 497 
Whether the payments by the county for the services it accepted and supervised were from funds raised by taxation or from funds donated by the citizens, is immaterial. The county employed the workmen. Those workmen are as much entitled to the benefits of the workmen's compensation act as men working alongside of them receiving more for their labor and who are paid from moneys derived from taxation. To hold otherwise would be inhumane as depriving these unfortunates of the protection of an act passed for their benefit as much as for the benefit of their fellow workers who are paid by the taxpayers.
The county can not, after accepting the services of these men, exempt itself from the burden imposed by the statute. Nor can the employee, by any agreement — however needy he may be — to work for less than the standard wage and accepting that wage in the form of groceries and clothing, waive the benefits of this act which was passed for the protection of all workmen engaged in extrahazardous employment, and their dependents.
"No employer or workman shall exempt himself from the burden or waive the benefits of this act by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void." Rem. Comp. Stat., § 7685. *Page 498